1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

MYA M. TRACY, et al.,

11                          Plaintiffs,                    Case No. 09-5588RJB

12          v.                                             ORDER GRANTING
                                                           DEFENDANTS' MOTIONS FOR
13   STATE OF WASHINGTON, et al.,                          SUMMARY JUDGMENT

14                          Defendants.

15

16   MALACHI TRACY,                                        Case No. 09-5589RJB

17                          Plaintiffs,

18          v.

19   STATE OF WASHINGTON, et al.,

20                          Defendants.

21

22          This matter comes before the Court Defendants' Motions for Summary Judgment (Dkts.

23   93, 98, 105, and 107-2).  The Court has considered the motions, the responses and the remainder

24   of the file herein.

25                  **I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

26          Plaintiffs Mya Tracy, Malachi Tracy, and Mya Tracy on behalf of M.T., a minor, brought

27   suit against several individuals and entities in this case.  Plaintiffs sued Principal Diane Holt,

28

ORDER - 1

assistant administrator Jenna Brown, kindergarten teacher Joan Moser, and their respective spouses, and the Federal Way School District.  These Defendants shall be referred to collectively as "School District Defendants" or "School Defendants."  Plaintiffs also sued Amy Kernkamp, Thomas Young, and their respective spouses, the State of Washington, and Department of Social and Health Services ("DSHS").  These Defendants shall be referred to collectively as "State Defendants."  Finally, Plaintiffs sued Jennifer Knight, her spouse, and MultiCare Health System.

MultiCare Health System ("MHS") owns and operates Mary Bridge Children's Hospital and is the lead agency for the Children's Advocacy Center of Pierce County ("CAC"), a multi-agency body founded to offer a coordinated and comprehensive approach to the investigation and treatment of child victims of alleged sexual and severe physical abuse in Pierce County. Dkt. 98, p. 2.  MHS provides case management and coordination of joint investigations to the CAC, and it employs the CAC's staff of forensic child interviewers.  *Id*. at p. 3.  MHS also owns and operates the Child Abuse Intervention Department ("CAID"), which frequently conducts medical examinations of children in connection with child abuse investigations at the CAC.  *Id*. Jennifer Knight was a forensic interviewer and was employed by MHS.  *Id*.

On June 1, 2006, at Green Gables Elementary School, M.T., a minor, was referred to assistant administrator Jenna Brown for a behavioral/discipline issue when M.T. and a student who will be referred to as "G" hit one another in the groin area when they were playing a game in which they were pretending to be baby jaguars.  Dkt. 105, p. 3-4.  Ms. Brown met with M.T. and G to discuss the incident, and reminded them that hitting and touching others in the private area was not "OK."  Dkt. 105, p. 4.

On June 5, 2006, M.T. was referred to Ms. Brown again when another student who will be called "Z" reported that M.T. touched Z's penis while he was using the bathroom.  Dkt. 105, p. 4.  When Ms. Brown talked to M.T. about the incident, M.T. stated that he had just touched Z like his brother, Malachi, touched him.  *Id*.  M.T. also disclosed to Ms. Brown that Malachi repeatedly touched him; most recently a week ago.  *Id*.  Immediately following the disclosure, Ms. Brown asked M.T. to wait in her office while she discussed the matter with Principal Diane

1   Holt. Dkt. 105, p. 5. It was decided that Ms. Brown did not need to further question M.T. and

2   that the disclosure must be reported to Child Protective Services ("CPS"). *Id*. School

3   Defendants state that Ms. Brown was concerned for M.T.'s safety and believing that M.T. had

4   disclosed potential on-going sexual touching by his older brother, Ms. Brown in consultation

5   with Ms. Holt, completed Federal Way Public Schools Form 425, Report of Suspected Child

6   Abuse and Neglect, and reported M.T.'s disclosure to CPS as required by RCW 26.44.030(1)(a).

7   *Id*. During the initial telephone conversation with CPS, the CPS intake worker advised Ms.

8   Brown not to discuss this disclosure with M.T.'s parents. *Id*. School Defendants state that they

9   had no other communication with M.T. regarding M.T.'s disclosure, leaving the investigation of

10   possible abuse to CPS or law enforcement. *Id*.

11   On June 5, 2006, the Department of Social & Health Services ("DSHS") received the

12   referral regarding M.T., the minor child of Mya Tracy, which alleged that he had been sexually

13   abused by his older brother, Malachi Tracy. Dkt. 93, p. 2. The State Defendants state that the

14   referral was accepted for investigation and assigned a risk tag of "5-High," that there were

15   numerous concerns regarding Malachi based on his past history, that their primary concerns were

16   that Malachi had re-offended against M.T., and that M.T. was unable to protect himself from

17   Malachi since he was only seven years old. *Id.* at p. 3.

18   The State Defendants indicate that the referral was originally assigned to the Kent office

19   of DSHS's Division of Children and Family Services ("DCFS") for investigation and was

20   promptly forwarded to law enforcement. Dkt. 93, p. 3. It was then transferred to the Tacoma

21   DCFS office. *Id*. The referral was also routed to Defendant Thomas Young, a Child Protective

22   Services ("CPS") supervisor. *Id*. State Defendants indicate that, after Mr. Young reviewed the

23   referral, he was concerned about M.T.'s safety due to the specific allegations in the referral and

24   Malachi's well-documented history of sexually abusing minor children, including prior abuse of

25   M.T. *Id*.

26   On June 6, 2006, Mr. Young spoke briefly with Mya Tracy by telephone. Dkt. 93, p. 3.

27   Mr. Young advised Mya that she should not allow Malachi to have any unsupervised contact

28   with M.T. *Id*. Young and Mya agreed that she would send Malachi to his father's house and

ORDER - 3

1   that Malachi would stay there to prevent the boys from having unsupervised contact.  *Id*.

2       The referral was next assigned to Defendant Amy Kernkamp for investigation.  Dkt. 93,

3   p. 4.  After reviewing the referral, Kernkamp consulted Young regarding the case and his

4   concerns.  Kernkamp also spoke with a King county Sheriff's Detective who had been assigned

5   to the case and who provided Kernkamp with documentation regarding the Sheriff's

6   investigations into Malachi's past sex offenses.  *Id*.

7       On June 7, 2006, Kernkamp spoke with Mya for the first time.  Dkt. 93, p. 4.  Mya

8   confirmed that Malachi was now living with Mark, his father.  *Id*.  Kernkamp told Mya that

9   school officials were mandatory reporters and, due to M.T.'s disclosure of sexual abuse, Mya

10  could not allow the boys to have unsupervised contact until the allegations were investigated.  *Id*.

11  Kernkamp also told Mya that no one should interview M.T., because he was going to have a

12  forensic interview at the Child Advocacy Center ("CAC").  *Id*.

13      On June 7, 2006 and June 8, 2006, Kernkamp spoke with Defendant Diane Holt, the

14  principal at Green Gables Elementary.  Dkt. 93, p. 5.  The School Defendants state that they had

15  no other involvement in the investigation by CPS and law enforcement of this matter, had no

16  knowledge of or involvement in the forensic interview and physical examination of M.T.

17  performed by professionals employed by MHS, and had no contact with the Pierce County

18  Prosecutor's office.  Dkt. 105, p. 6.

19      On June 8, 2006, Kernkamp conducted a safety interview with M.T. at Green Gables

20  Elementary.  Dkt. 92, p. 5.  Defendant State states that the purpose of the interview was to build

21  rapport with M.T. and identify any immediate safety threats that needed to be addressed before

22  the forensic examination.  *Id*.  During the interview, when M.T. was asked if anyone scared him,

23  M.T. identified Malachi.  *Id*.  Kernkamp concluded the safety interview at that point, in

24  deference to the scheduled forensic interview.  *Id*.

25      Later that day, Kernkamp spoke with Mya again by telephone.  Dkt. 93, p. 5.  Mya

26  admitted that she had not informed the school about Malachi's prior sexual abuse of M.T. or that

27  Malachi was a registered sex offender.  *Id*.

28      On June 9, 2006, Kernkamp spoke with Mark, the father of M.T.  Dkt. 93, p. 6.

1  Kernkamp advised Mark that while it may be inconvenient for him, the safety of M.T. was the

2  most important thing to consider.  *Id*.  Kernkamp told mark to continue with the current safety

3  plan, so that M.T. was with one parent while Malachi was with the other.  *Id*.  Mark continued to

4  insist that this arrangement would not work due to how it would impact his personal and social

5  life.  *Id*.

6        On June 19, 2006, Jennifer Knight, M.A., a trained, experienced forensic interviewer and

7  then-MHS employee, conducted a videotaped forensic interview of M.T.  Dkt. 98, p. 3.  On the

8  same date, M.T.'s mother, Mya Tracy, consented to an anogenital exam by CAID physician

9  Yolanda Duralde, M.D.  *Id*.  The exam was "normal – abuse may have occurred – no physical

10  findings."  *Id*.

11        On July 31, 2009, Plaintiffs M.T. and Mya Tracy filed a complaint in Thurston County

12  Superior Court against the State, certain State employees, Federal Way School District ("School

13  District"), certain School District employees, and Jennifer Knight.  Dkt. 98, p. 4.  On September

14  22, 2009, Mya and M.T.'s suit was removed to this Court.  Dkt. 1.  Mya and M.T.'s original

15  complaint was not served on Ms. Knight until January 15, 2010.  Dkt. 98, p. 4.  Defendants

16  Knight and MHS states that the current complaint neither named, nor was served upon MHS.  *Id*.

17        Also on July 31, 2009, Plaintiff Malachi Tracy filed a similar complaint against the same

18  Defendants in Thurston County Superior Court.  Dkt. 98, p. 4.  Malachi's original complaint was

19  never served on Ms. Knight or MHS.  *Id*.  On September 21, 2009, Malachi's suit was removed

20  to this Court.  *Id*.  On October 19, 2009, the Court consolidated Malachi's suit with the instant

21  one.  Dkt. 20.

22        On March 30, 2010, Plaintiffs filed an amended complaint, using only a truncated caption

23  and recharacterizing Ms. Knight's employment at Mary Bridge Children's Hospital.  Dkt. 98, p.

24  4.  On April 23, 2010, Defendants Knight and MHS accepted service of the amended complaint.

25  Dkt. 98, p. 5.

26        Defendants now move for summary judgment as to all the Plaintiffs' claims, seeking

27  dismissal of Plaintiffs' claims.

28  *///*

ORDER - 5

1 ///

2                                    **II. DISCUSSION**

3 **A. Summary Judgment Legal Standard**

4          Summary judgment is proper only if the pleadings, the discovery and disclosure materials

5 on file, and any affidavits show that there is no genuine issue as to any material fact and that the

6 movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

7 entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

8 showing on an essential element of a claim in the case on which the nonmoving party has the

9 burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

10 of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

11 for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

12 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

13 metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

14 material fact exists if there is sufficient evidence supporting the claimed factual dispute,

15 requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

16 *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

17 *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

18          The determination of the existence of a material fact is often a close question.  The court

19 must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

20 e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

21 *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

22 of the nonmoving party only when the facts specifically attested by that party contradict facts

23 specifically attested by the moving party.  The nonmoving party may not merely state that it will

24 discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

25 to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

26 Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

27 be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

28          As other courts have noted, "[i]t is not our task, or that of the district court, to scour the

ORDER - 6

1   record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify

2   with reasonable particularity the evidence that precludes summary judgment." *Richards v.*

3   *Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995); *see also Guarino v. Brookfield Township*

4   *Trustees,* 980 F.2d 399, 405 (6th Cir.1992) ("[The nonmoving party's] burden to respond is really

5   an opportunity to assist the court in understanding the facts. But if the nonmoving party fails to

6   discharge that burden-for example, by remaining silent-its opportunity is waived and its case

7   wagered.").  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

8   **B.  Statute of Limitations - § 1983 and § 1985 claims**

9        Defendants Knight and MHS request that the adult Plaintiffs' § 1983 and § 1985 claims

10   be dismissed because the adult Plaintiffs' claims carry a three-year limitation period.  Dkt. 98, p.

11   7.  Defendants Knight and MHS state that the causes of action accrued on June 19, 2006.  *Id.*

12   Defendants Knight and MHS state that no complaint stating a claim against Ms. Knight was ever

13   filed until July 31, 2009, and Ms. Knight was not served until January 15, 2010.  *Id.* at p. 8.

14   Defendants Knight and MHS also state that no complaint stating claims against "Defendant

15   Mary Bridge Children's Hospital... operated under Multicare Health Systems" was ever filed

16   until March 30, 2010, and service of it onto MHS was never achieved until April 23, 2010.

17        Plaintiffs respond by asserting that their claims are not time-barred and that RCW

18   4.96.020(4) tolls the time for which to assert a claim.  Dkt. 112, p. 3-4.  Plaintiffs also assert that

19   service was within the time limits under Fed.R.Civ.P. 4(m), and that the mis-naming of Mary

20   Bridge Hospital as a party is not dispositive.  *Id.* at p. 4-6.

21        Defendants Knight and MHS reply, arguing that RCW 4.96.020(4) does not apply to

22   MHS because it is a private nonprofit corporation, not a "local governmental entity," and that

23   Plaintiffs have not shown that they provided the requisite notice to MHS before the three-year

24   period ran.  Dkt. 124, p. 1.

25        State Defendants assert that Mya and Malachi's civil rights claims are barred by the

26   statute of limitations.  Dkt. 93, p. 16.  Plaintiffs respond by asserting that the statute of

27   limitations is tolled by RCW 4.96.020(4).  Dkt. 133, p. 10.  State Defendants reply by pointing

28   out that RCW 4.96.020(4) applies to lawsuits filed against local government agencies, not state

ORDER - 7

1    agencies, and that the claims-notice statutes pertaining to state agencies are set forth at RCW

2    4.92.010, et seq. Dkt. 147, p. 6.  State Defendants further state that claims-notice statutes do not

3    apply to federal civil rights claims.

4            School Defendants assert that Mya and Malachi's federal claims are barred by the statute

5    of limitations. Dkt. 105, p. 13; Dkt. 107-2, p. 13.  Plaintiffs, again, claim that RCW 4.96.020(4)

6    tolls the statute of limitations.  Dkt. 141, p. 11; Dkt. 144, p. 11.

7            The basic law regarding the statute of limitations to be applied to § 1983 and §1985

8    actions is clearly established.  *See Owens v. Okure*, 488 U.S. 235, 239 ("Title 42 U.S.C. § 1988

9    endorses the borrowing of state-law limitations provisions where doing so is consistent with

10   federal law....").  The length of the limitation period, and closely related questions of tolling and

11   application, are to be governed by state law.  *Silva v. Crain*, 169 F.3d 608, 610 (9th Cir.

12   1999)(*quoting Wilson v. Garcia*, 471 U.S. 261, 269 (1985)).  The particular period which is to be

13   used is the one which applies to tort actions for the recovery of damages for personal injuries.

14   *Id*.  In the event that the state has multiple statutes of limitations, courts considering § 1983

15   claims should borrow the general or residual statute for personal injury actions.  *Id. (quoting*

16   *Owens v. Okure*, 488 U.S. 235, 250 (1989)).  An action under § 1985(3) alleging a conspiracy to

17   deprive a person of constitutional rights is designed to remedy the same types of harms as the

18   deprivations actionable under § 1983.  *McDougal v. County of Imperial*, 942 F.2d 668, 673 (9th

19   Cir. 1991).  Suits under § 1985(3) are governed by the same statute of limitations as actions

20   under § 1983.  *Id.* at 674.  It is undisputed that RCW 4.16.080 is the applicable statute

21   establishing the statute of limitations in this case, which is three years from the time a cause of

22   action accrues.

23           The parties, however, disagree as to whether RCW 4.96, which applies to suits against

24   local governments, and RCW 4.92, which applies to suits against state government, toll the

25   statute of limitations.  In general, state notice of claim statutes have no applicability to § 1983

26   actions and § 1985 actions.  *Silva*, 169 F.3d at 610 (*citing Felder v. Casey* 487 U.S. 131, 140-41

27   (1988)).  That includes state special statutes of limitations. *Id*. (*citing Donovan v. Reinbold*, 433

28   F.2d 738, 741-41 (9th Cir. 1970).

RCW 4.96.020(4) states,

> No action subject to the claim filing requirements of this section shall be commenced against any local governmental entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim has first been presented to the agent of the governing body thereof. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty calendar day period. *For the purposes of the applicable period of limitations, an action commenced within five court days after the sixty calendar day period has elapsed is deemed to have been presented on the first day after the sixty calendar day period elapsed.*

(emphasis added).  RCW 4.92.110 states,

> No action subject to the claim filing requirements of RCW 4.92.100 shall be commenced against the state, or against any state officer, employee, or volunteer, acting in such capacity, for damages arising out of tortious conduct until sixty days have elapsed after the claim is presented to the risk management division. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty calendar day period.  *For purposes of the applicable period of limitations, an action commenced within five court days after the sixty calendar day period has elapsed is deemed to have been presented on the first day after the sixty calendar day period elapsed.*

(emphasis added).  Plaintiffs argue that RCW 4.96 and 4.92 apply to federal claims and cite *Wyant v. City of Lynnwood*, 621 F.Supp.2d 1108 (2008) to support their argument.  Dkt. 133, p. 10.  Plaintiffs state that the *Wyant* court found that RCW 4.96.020(4) was a tolling statute and applied to § 1983 actions.  *Id*.

Binding authority appears to be vague in regard to tolling statutes, and there appears to be disagreement among various district courts regarding whether RCW 4.96.020(4) applies to § 1983 actions.  *See Syvyy v. Wawrzycki*, No. C10-5073RBL, 2010 WL 2836146 (W.D. Wash, July 19, 2010)(holding that RCW 4.96.020(4) does apply to § 1983 actions); *Wyant*, 621 F.Supp.2d 1108 (holding that RCW 4.96.020(4) applies); *Fleming v. Washington*, No. C07-5246FDB, 2008 WL 4223226 (W.D. Wash. September 11, 2008)(holding that RCW 4.96.020(4) and RCW 4.96.100 do not apply to § 1983 actions); *Southwick v. Seattle Police Officer John Doe No. 1*, 186 P.3d 1089 (Wash. Ct. App. 2008)(holding that the tolling provision of RCW 4.96.020(4) cannot be separately applied to a § 1983 action); and *Pertolino v. County of Spokane*, No. 07-228FVS, 2007 WL 4365788 (E.D. Wash. Dec. 11, 2007)(holding that RCW 4.96.020(4) does apply to § 1983 actions).  It also appears that the district court decisions may be at odds with

1   Ninth Circuit opinions, which is what Defendants assert.  The case law, however, may be

2   harmonized as follows:

3       It is clear that notice claim, or pre-suit, statutes (requiring filing a claim with the entity

4   before filing suit) are not applicable to § 1983 actions.  It also appears clear that tolling statutes

5   are applicable in § 1983 actions.  *Silva*, 169 F.3d at 610.  The *Wyant* court bifurcated RCW

6   4.96.020(4) into two sections; finding that the first two sentences were a pre-suit statute, while

7   the last sentence was a tolling provision.  *Wyant*, at 1111.  The *Wyant* court reasoned that

8   nothing preempts the application of the tolling portion of the statute.  *Id*. at 1112.  The courts in

9   *Wyant*, *Petrolino*, and *Syvyy*, all found that RCW 4.96.020(4) applied, while the court in *Fleming*

10  disagreed.  It appears that the difference was whether a plaintiff filed a pre-suit claim.  Where a

11  pre-suit claim was filed, although not required under federal law, the tolling period contained

12  within the last sentence of RCW 4.96.020(4) applied.  In *Fleming*, the order was silent as to

13  whether the plaintiff did file a pre-suit claim.  Therefore, it would be consistent with other courts

14  in this district and applicable Ninth Circuit law to apply the tolling section of RCW 4.96.020(4)

15  in § 1983 actions only when plaintiff has filed a pre-suit claim.  In other words, when a plaintiff

16  voluntarily files a pre-suit claim, that action, even though unnecessary, tolls the statute of

17  limitations.  The Court notes that while *Southwick* held that RCW 4.96.020(4) does not apply,

18  but when a state court interprets federal law, its decision does not bind a federal court.

19      Since the last sentence of RCW 4.92.100 is identical to the last sentence of RCW

20  4.96.020(4) and the two statutes are largely identical, both tolling provisions apply to § 1983 and

21  § 1985 actions.  *See McDougal v. County of Imperial*, 942 F.2d 668, 674 (9th Cir. 1991) (Suits

22  under § 1985(3) are governed by the same statute of limitations as actions under § 1983).

23      In this case Plaintiffs allege in their complaint that they did file a tort claim form with the

24  appropriate state or local agency.  Dkt. 44, p.4, ¶¶ 3.1, 3.2.  However, Plaintiffs have not shown

25  evidence that they did file a tort claim form.  Fed.R.Civ.P. Rule 56(e)(2) states that "[w]hen a

26  motion for summary judgment is properly made and supported, an opposing party may not rely

27  merely on allegations or denials in its own pleading; rather, its response must... set out specific

28  facts showing a genuine issue for trial.  If the opposing party does not so respond, summary

ORDER - 10

1  judgment should, if appropriate, be entered against that party."  Conclusory, non specific

2  statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  *Lujan v.*

3  *National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

4       Plaintiffs have not attached the alleged claim forms to either their original complaint,

5  amended complaint, or to their responses to Defendants' motion for summary judgment.

6  Plaintiffs have been given ample opportunity to provide evidence of such filing, but they have

7  failed.  As such, the tolling provisions of RCW 4.96.020(4) and RCW 4.92.100 do not apply to

8  Plaintiffs' § 1983 and § 1985 claims.  The statute of limitations is three years and prevents

9  Plaintiffs Mya Tracy's and Malachi Tracy's § 1983 and § 1985 claims.  Fed.R.Civ.P. Rule 3

10 controls when an action which arise under federal law is "commenced" for purposes of tolling

11 the statute of limitations borrowed from state law.  *S.J. v. Issaquah School District No. 411*, 470

12 F.3d 1288, 1289 (9th Cir. 2006).  Fed.R.Civ.P. Rule 3 states "[a] civil action is commenced by

13 filing a complaint with the court."  Ms. Brown interviewed M.T. on June 5, 2006.  Dkt. 105, p. 4.

14 The latest Plaintiffs may file a claim against the School Defendants would have been June 5,

15 2009.  The Plaintiffs suits were filed on July 31, 2009.  Dkt. 1.  This is over a month past the

16 statute of limitations.  Jennifer Knight interviewed M.T. and Yolanda Duralde, M.D. examined

17 M.T. on June 19, 2006.  Dkt. 98, p. 3.  The latest Plaintiffs may file a claim against State

18 Defendants and Defendants Knight and MHS would have been June 19, 2009.  The Plaintiffs

19 filed their suits on July 31, 2009.  Dkt. 1.  This is over a month past the statute of limitations.

20 State Defendants', School Defendants', and Defendants Knight's and MHS's motions for

21 summary judgment in regards to the statute of limitations should be granted and Plaintiffs Mya

22 Tracy's and Malachi Tracy's § 1983 and § 1985 claims should be dismissed.

23       However, M.T.'s § 1983 and § 1985 claims survive since his action is tolled under RCW

24 4.16.190(1), which states "if a person entitled to bring an action mentioned in this chapter... be at

25 the time the cause of action accrued... under the age of eighteen years... the time of such

26 disability shall not be part of the time limited for the commencement of action."  M.T. is under

27 the age of eighteen years.  M.T.'s causes of action under § 1983 and § 1985 are tolled until he

28 reaches the age of eighteen.

1    In spite of the statute of limitations barring Plaintiffs Mya Tracy's and Malachi Tracy's

2    claims, the Plaintiff Mya's and Malachi's claims will be analyzed below, along with Plaintiff

3    M.T.'s claims.

4    **C. Plaintiffs' § 1983 Claim**

5    To state a claim for relief in an action brought under § 1983, plaintiff must establish that

6    they were deprived of a right secured by the Constitution or laws of the United States, and that

7    the alleged deprivations was committed under color of state law. *American Mfrs. Mut. Ins. Co.*

8    *v. Sullivan*, 526 U.S. 40, 49-50(1999); *Caviness v. Horizon Community Learning Center*, 590

9    F.3d 806, 812 (9th Cir. 2010). The "under color of state law" element excludes "merely private

10   conduct, no matter how discriminatory or wrongful. *Id.* at 50. "State action may be found if,

11   though only if, there is such a close nexus between State and the challenged action that

12   seemingly private behavior may be fairly treated as that of the State itself. *Caviness*, 590 F.3d at

13   812. The inquiry begins by identifying the specific conduct of which the plaintiff complains. *Id.*

14

15   Qualified immunity protects public officials from suit unless they have violated a "clearly

16   established" right of which a reasonable public official would have know. *Saucier v. Katz*, 533

17   U.S. 194, 200-02 (2001). The qualified immunity analysis involves two steps. First, a plaintiff

18   must demonstrate that the challenged conduct violated a constitutional right. *Saucier*, 533 U.S.

19   at 201. If the facts do not constitute a violation of a constitutional right, the inquiry ends. *Id.* If

20   the facts establish the violation of a constitutional right, the plaintiff must then demonstrate that

21   the right was "clearly established" at the time the challenged conduct occurred. *Id.* "[W]hile the

22   sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as

23   mandatory." *Pearson v. Callahan*, 129 S.Ct. 808, 811 (2009). "The judges of the district courts

24   and the courts of appeals should be permitted to exercise their sound discretion in deciding

25   which of the two prongs of the qualified immunity analysis should be address first in light of the

26   circumstances in the particular case at hand. *Id.*

27    **1. Defendant Knight and MHS - Under Color of Law**

28   Defendants Knight and MHS assert that Plaintiffs' claims are fatally flawed because they

1  cannot show the Defendants' actions were state actions.  Dkt. 98, p. 12.  Defendants Knight and

2  MHS state that MHS is a private, nonprofit corporation; not a governmental body.  *Id*.  In the

3  alternative, Defendants Knight and MHS contend that even if they were state actors, they enjoy

4  qualified immunity.  Dkt. 98, p. 13.

5      Plaintiffs respond by asserting that the sole purpose of the forensic interview was the

6  investigation of sexual abuse, a state duty.  Dkt. 112, p. 8.  Thus, Plaintiffs claim that Defendants

7  Knight and MHS were jointly engaged in prohibited action and were acting under color of law.

8  *Id*.  Plaintiffs admit, however, that they are not alleging a violation of 42 U.S.C. § 1983.  *Id*. at p.

9  9.  Plaintiffs also assert that Ms. Knight violated Mya Tracy's fundamental right to make

10 decisions concerning the care, custody, and control of her children.  Dkt. 112, p. 9.  Specifically,

11 Plaintiffs assert that the ordering of the child, Malachi Tracy, from his mother's house and

12 forcing M.T. to undergo a medical exam without the presence of his mother, violated the right of

13 family unity claimed by the Plaintiffs.  Dkt. 112, p. 10.  Plaintiffs state that "removal of the child

14 from his mother," and that the medical examination of M.T. without his mother present violated

15 clearly established rights.

16     Defendants Knight and MHS respond by stating that the record is devoid of evidence that

17 Ms. Knight was involved in the alleged "removal" of Malachi from Mya's home.  Dkt. 124, p. 3.

18 Defendants Knight and MHS state that there is absolutely no evidence Ms. Knight ordered

19 Malachi from the home, "controlled the flow of information" in the CPS investigation, or "had

20 any authority to dictate Judge Fleming's decision – some four months later – to impose certain

21 conditions (including bail) on Malachi's release pending trial."  Dkt. 124, p. 3-4.  Defendants

22 Knight and MHS also state that Plaintiffs are now arguing, for the first time, that Dr. Duralde's

23 anogenital exam of M.T. was performed "abus[ively]" and without Mya's freely-given consent.

24 Dkt. 124, p. 4.

25     Plaintiffs makes broad allegations regarding Defendants Knight's and MHS's

26 relationship to the state.  The Plaintiffs have not, however, made a showing that Defendants

27 Knight and MHS were state actors.  They have presented only declarations made by Plaintiffs'

28 counsel, inconclusive filings, and an assertion that Amy Kernkamp stated something in her

ORDER - 13

1  declaration that may support some relationship between the State and Defendants Knight and

2  MHS.  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts"

3  will not be "presumed."  *Lujan*, 497 U.S. at 888-89.  Additionally, the Plaintiff does not quote

4  from the record, nor does he cite to the record to support his allegations.  It is not the duty of the

5  court to "scour the record in search of a genuine issue of material fact."  *See Keenan v.*

6  *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Plaintiffs have presented no admissible

7  evidence on those issues as required by FRCP 56.

8          The only evidence submitted by Plaintiffs which may show a relationship between Ms.

9  Knight, MHS and the State is a printout of a website and a declaration by Plaintiffs' counsel

10 stating what Amy Kernkamp and Jennifer Knight said in a deposition.  Dkt. 115.  The website

11 printout does not show that MHS or Ms. Knight was acting under color of state law.  In fact, it

12 works against Plaintiffs' claims.  First, it only states that state and local officials were part of a

13 team at the CAC.  It does not state that the CAC is a governmental organization or controlled by

14 a governmental agency.  Moreover, the website printout states that the CAC "was funded by the

15 Rotary Clubs of Pierce County and the Tacoma Orthopedic Association as well as many other

16 community supporters."  This would imply that the CAC is a private organization.  Finally,

17 Plaintiffs' counsel seizes on the fact that certain governmental representatives were "housed" in

18 the same building as Ms. Knight.  Again, this is not evidence which shows that Ms. Knight

19 worked for a governmental agency or at the direction of a governmental agency.  The evidence

20 presented is speculative at best and does not show Ms. Knight was acting under color of law.

21         Defendant Knight and MHS's motion for summary judgment regarding all Plaintiffs' §

22 1983 claims against Defendant Knight and MHS should be granted.

23         **2. State Defendants - Qualified Immunity**

24         "It is well established that a parent has a fundamental liberty interest in the

25 companionship and society of his or her child and that the state's interference with that liberty

26 interest without due process of the law is remediable under [42 U.S.C. §] 1983."  *Crowe v.*

27 *County of San Diego*, 608 F.3d 406, 441 (9th Cir. 2010)(*quoting Lee v. City of Los Angeles*, 250

28 F.3d 668, 685 (9th Cir. 2001)).  Parents have a right to be present at medical examinations of

their children or "to be in a waiting room or other nearby area if there is a valid reason for

excluding them." *Greene v. Camreta*, 588 F.3d 1011, 1037 (9th Cir. 2009)(*citing Wallis v.

*Spencer*, 202 F.3d 1126, 1130 (9th Cir. 2000)).  "[U]nwarranted state interference with the

relationship between parent and child violates substantive due process."  *Crowe*, 608 F.3d at 441

(*citing Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987)).

Plaintiffs allege that the "ordering of the child, Malachi Tracy, from his mother's house,"

and the "forcing [M.T.] to undergo a rectal exam without presence of his mother" violated the

right of family unity.  Dkt. 133, p. 5.  As noted above, the federal claims by Malachi and Mya

are barred by the statute of limitations.  Even if the court assumes that Malachi's federal claims

were not barred, Plaintiffs have not established that State Defendants violated any right which is

clearly established since Malachi was an adult in June 2006, before the time of the school

interview and the medical examination.  Dkt. 147, p. 2; Dkt. 148, p.  Plaintiffs have not shown

that there is a "clearly established" substantive due process right in the companionship of an

adult child or companionship of a sibling.  Therefore, the State Defendants are entitled to

qualified immunity.

Plaintiffs also fail to show that M.T.'s rights were violated and that State Defendants

were not entitled qualified immunity.  It appears that the Plaintiffs have conceded that the

interview by State Defendants did not violate any constitutional right.  Plaintiffs now only claim

that exclusion of Mya from M.T.'s medical examination violated Plaintiffs' constitutional right

to family unity.  Plaintiffs, however, have not shown that the medical examination was

unwarranted.  Plaintiffs cite *Greene* and *Wallis* to support their assertion that they were deprived

of their constitutional rights.  The cases are distinguishable.  It is undisputed that Mya Tracy

consented to the medical examination.  See Dkt. 121, p. 3., Dkt. 93, ¶ 19, Dkt. 148-3.  Mya

Tracy attempts, however, to characterize her consent as coerced.  Dkt. 121.  Mya states that she

was at the hospital "in a room down the hall" from the examination room when she heard M.T.

yell, "mommy."  Dkt. 113, p. 3.  Mya alleges that she was "blocked by a hospital employee from

entering the room."  *Id*.  Mya admits that she was allowed to enter the room once the exam was

completed.  *Id*.  In *Greene*, the court found that the decision to exclude the mother "not just from

ORDER - 15

the examination but from the entire facility where her daughter was being examined violated [the family's] clearly established rights." 588 F.3d at 1037. In this case, Mya was not excluded from the facility; she was in a room near the examination room. In *Wallis*, the court found a violation of rights when city removed the children from the home and placed them in a receiving home and foster homes, and hid the location of the foster homes. 202 F.3d at 1141. This clearly was not the case in the examination of M.T. M.T. was not removed from the home or placed in foster homes. M.T. was merely examined. Plaintiffs simply have not shown that Defendants have violated a constitutional right. Even if the court assumes there was a violation of a right, it has not been "clearly established" that Mya had the absolute right to be in the examination room with M.T. *See Greene v. Camreta*, 588 F.3d at 1036 (noting that the right to be present at a medical examination " may be limited in certain circumstances, if there is some 'valid reason' to exclude family members from the exam room"); *Wallis v. Spencer*, 202 F.3d 1142 (noting that parents have the right to "be in a waiting room or other nearby area if there is a valid reason for excluding family members from the exam room"). Plaintiff Mya only has a limited right to be in the exam room and may be excluded if there is a valid reason. The State Defendants did state a valid reason which is unrebutted by Plaintiffs. State Defendants state that they have a "compelling interest in protecting M.T." Dkt. 93, p. 12. State Defendants continue their argument by pointing to Mya's preoccupation with the school's alleged misconduct, and M.T.'s statements made during the safety and forensic interviews, to support exclusion of Mya from the examination room. Dkt. 93, p. 13-14. For the foregoing reasons, the State Defendants are entitled to qualified immunity. The court notes that even if Ms. Knight and MHS were acting under color of law, they too would be protected by qualified immunity. It appears, however, that Plaintiffs abandoned the argument that the interview by Ms. Knight violated any constitutional right. State Defendants' motion for summary judgment as to qualified immunity should be granted. All Plaintiffs' § 1983 claims against State Defendants should be dismissed.

### 3. School Defendants - Qualified Immunity

School Defendants argue that they have qualified immunity because a parent's interest in the custody and care of his or her child does not include a constitutional right to be free from

1   child abuse investigations.  Dkt. 107-2, p. 7.  School Defendants also state that they know of no

2   legal authority extending a sibling's right to the custody and care of his or her sibling.  *Id*. at p. 8.

3   Finally, School Defendants assert that there is no constitutional right to have children

4   interviewed in a particular manner or pursuant to a certain protocol during a child abuse

5   investigation.  *Id*.

6         Plaintiffs assert that the removal of M.T. from his mother was a violation of the

7   constitutional right to family association.  Dkt. 144, p. 5, 6.  Plaintiffs argue that unlike CPS and

8   law enforcement, the school defendants had no inherent power to investigate.  *Id*. at p. 6.

9   Plaintiffs also argues that the school interview of M.T. on June 5, 2006, by Ms. Brown was

10  coercive and abusive.  *Id*. at p. 7.

11        School Defendants reply by asserting the any right to family unity that might exist in the

12  context of reporting sexual abuse is not "clearly established."  Dkt. 149, p. 7.  School Defendants

13  also state that Plaintiffs' reliance on *Devereaux v. Perez*, 218 F.3d 1045 (9th Cir. 2000), is

14  misplaced, and Plaintiffs still have not established a violation of a clear constitutional right.  *Id*.

15        The Court notes that Mya's and Malachi's § 1983 claims are barred by the statute of

16  limitations, as stated above.  The Court also notes that Plaintiffs, even though granted an

17  extension of time, filed their response late.  However, in the interest of justice and resolving the

18  matter on the merits, the Court will consider the Plaintiffs response.

19        Plaintiffs have not shown that there was a violation of a constitutional right which has

20  been clearly established.  It has been explicitly established that there is no constitutional due

21  process right to have a child witness in a child sexual abuse investigation interviewed in a

22  particular manner, or to have the investigation carried out in a particular way or pursuant to a

23  certain protocol.  *Devereaux v. Perez*, 218 F.3d at 1053 ("*Devereaux I*"); *Devereaux v. Perez*,

24  263 F.3d 1070, 1075 (9th Cir. 2001)("*Devereaux II*").  "[M]ere allegations that Defendants used

25  interviewing techniques that were in some sense improper, or that violated state regulations,

26  without more, cannot serve as the basis for a claim under § 1983."  *Devereaux II* at 1075.

27        In *Devereaux II*, the court examined whether the plaintiff properly presented a

28  "fabrication-of-evidence" claim or an "improper-interview-techniques" claim.  *Devereaux II* at

1075.  The court only examined the plaintiff's fabrication-of-evidence claim and *assumed* that

plaintiff, at a minimum, must point to evidence that supports one of the following facts to make

out such a claim:

> (1) Defendants continued their investigation... despite the fact that they knew or
> should have known that [the interviewee] was innocent; or (2) Defendants used
> investigative techniques that were so coercive and abusive that they knew or
> should have known that those techniques would yield false information.

*Devereaux II* at 1076.  Plaintiffs here are not asserting a fabrication-of-evidence claim.  Even if

they were asserting a fabrication-of-evidence claim, they have not presented evidence showing

that Defendants knew or should have known that Malachi was innocent or that the investigative

techniques were so coercive and abusive that they *knew or should have known that those*

*techniques would yield false information*.  It is undisputed that M.T. volunteered the sexual

abuse information which Ms. Brown was then legally required to report, and that Malachi had a

history of sexual abuse.

Plaintiffs, in this case, appear to assert an improper-interview-technique claim.

*Devereaux II* did not apply the two part analysis to an improper-interview-technique claim.  In

*Devereaux I*, the court used a different standard; the interview techniques used would have to be

so "patently violative of [a] constitutional right that reasonable officials would know without

guidance from the courts that the action was unconstitutional." *Devereaux I* at 1056.  Based on

the undisputed facts, there is no showing that the interview by Ms. Brown was unconstitutional.

M.T. was interviewed due to a behavioral problem.  Dkt. 107-2, p. 4.  M.T. voluntarily disclosed

that Malachi had touched his genitals.  *Id*.  The entire conversation between Ms. Brown and

M.T. took less than 15 minutes.  *Id*.  In contrast, the conduct in *Devereaux I* involved multiple

interviews of A.S., with one interview lasting 6 hours, and the interviewer admonishing A.S., a

minor, to "tell the truth." *Devereaux I* at 1049.  The *Devereaux I* court still found that the

interview of A.S. was *not* so patently violative of a constitutional right that reasonable officials

would know without guidance form the court that the action was unconstitutional. *Id.* at 1056.

Plaintiffs have not presented any evidence to show that the interview was so egregious that a

reasonable official would have known that the action was unconstitutional.

ORDER - 18

1    Plaintiffs assert that the school defendants did not follow Federal Way policy for

2    interviewing a minor child, but *Devereaux I* explicitly stated that internal policy manuals

3    regarding interview techniques do not constitute decisional law giving rise to a constitutional

4    duty under § 1983, and that even where the interview techniques were not followed, state law

5    may only serve as a basis for § 1983 liability where the violation is cognizable under federal law.

6    *Devereaux I* at 1056.   Plaintiffs may have shown that the interview was not consistent with

7    district policy, but this does not rise to the level of unconstitutionality.   Plaintiffs have made no

8    showing that any constitutional right was violated.   Therefore, the School Defendants are entitled

9    to qualified immunity.   School Defendants' motion for summary judgment as to Plaintiffs' §

10   1983 claims should be granted.

11   **D.  Plaintiffs' § 1985 Claim**

12   As a preliminary matter, School Defendants note in their reply that Plaintiffs do not

13   oppose the dismissal of Plaintiffs § 1985 claims against Joan Moser.  Dkt. 149, p. 5.  Summary

14   judgment should be granted in her favor.

15   To prevail on a § 1985 claim, a plaintiff must establish acts by the defendants in

16   furtherance of a conspiracy to deprive a citizen of a federal right which were motivated by racial

17   or class-based animus.  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Caldeira v.*

18   *County of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989)("to prove a section 1985 conspiracy

19   between a private party and the government under section 1983, the plaintiff must show an

20   agreement or 'meeting of the minds' by the defendants to violate his constitutional rights").

21   "The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim

22   predicated on the same allegations."  *Caldeira*, 866 F.2d at 1182.

23   State Defendants argue that Plaintiffs have failed to provide evidence of conspiracy or

24   conspiracy motivated by racial or class-based animus.  Dkt. 93, p. 16.  Additionally, State

25   Defendants assert that Plaintiffs have failed to show deprivation of their constitutional rights

26   under § 1983.  *Id*.  School Defendants and Defendants Knight and MHS make substantially the

27   same arguments.  See Dkts. 107, 98.

28   Plaintiffs assert the same argument in response to all three motions for summary

1    judgments.  Plaintiffs argue that Defendant Kernkamp and Defendant Knight "yelled at Mya

2    Tracy" and "presented a united front when ordering Malachi Tracy to leave his house and when

3    they jointly denied Mya Tracy her access to her son during the medical examination by

4    forbidding her from entering the exam room."  Dkt. 112, p. 14.  Plaintiffs also assert that *Vill. of*

5    *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), stands for the proposition that Mya Tracy is a

6    class of one.  *Id.*

7         Plaintiffs Mya Tracy's and Malachi Tracy's § 1985 claims are barred by the statute of

8    limitations as stated above.  State Defendants and School Defendants are also entitled to

9    qualified immunity as stated above.  Even if the Court assumes that there is no qualified

10   immunity and that the statute of limitations is no bar, the Plaintiffs have not presented evidence

11   of any conspiracy in this case, conspiracy motivated by racial or class-based animus, or that

12   there was a deprivation of a constitution right.  Nothing in the record indicates that any of the

13   defendants' actions were *motivated* by "invidiously discriminatory animus."  Moreover,

14   Plaintiffs have never alleged any racial or class-based animus.  While the Plaintiffs attempt to

15   assert a class of one in their response to Defendants' summary judgment motion, the Defendants

16   point out that the case cited by Plaintiffs, *Vill. of Willowbrook*, applies to equal protection

17   claims, not due process claims.  Dkt. 147, p. 5, n. 9.  The term "class", as used in § 1985,

18   "unquestionably connotes something more than a group of individuals who share a desire to

19   engage in conduct that the § 1985(3) defendant disfavors."  *Bray v. Alexandria Women's Health*

20   *Clinic*, 506 U.S. 263, 269 (1993).  The Plaintiffs have not made a showing sufficient to establish

21   the existence of the elements of their claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

22   (1986).  For the foregoing reasons, the Defendants' motions for summary *judgment* should be

23   granted and the Plaintiffs' § 1985 claims should be dismissed.

24   **E.  Plaintiffs' Negligence, Negligent Hiring, Retention, Training And Supervision Claims**

25        Defendants Knight and MHS join State Defendants in their arguments regarding

26

27

28

ORDER - 20

negligence[1]. Dkt. 98, p. 14.  State Defendants and Defendants MHS assert that their employees were highly trained, experienced employees with no disciplinary history.  Dkt.  93, p. 18; Dkt. 98, p. 14.  They also assert that there is no evidence that the DSHS or MHS knew or reasonably should have known of any dangerous propensities on the part of their employees.  *Id.*  Moreover, State Defendants argue, the actions of Kernkamp and Young were objectively reasonable and consistent with applicable statutes, regulations, and Pierce County protocols.  *Id.*  Finally, State Defendants assert that there is no evidence that DSHS failed to provide Kernkamp and Young available training in any relevant area, or that any specific "deficiencies" in their training proximately caused Plaintiffs' alleged damages.  *Id.*

Plaintiffs failed to respond to State Defendants' and Defendants Knight and MHS's arguments.  Local Rule CR 7(b)(2) provides that  a failure to respond may be considered an admission that the motion has merit.  The State Defendants' and Defendants Knight and MHS's motion for summary judgment regarding Plaintiffs' negligence claims should be granted and the Plaintiffs' claims dismissed.

School Defendants argue Plaintiffs have no basis for their negligence claims.  Dkt. 107-2, p. 21.  School Defendants state that their employees were well qualified for their positions, that nothing in their history or background could have alerted the District that they were likely to improperly report a disclosure of abuse as alleged by Plaintiffs, that there is no evidence that Defendants owed a duty to Plaintiffs, and that Mya Tracy testified that she had no reason to believe that the District should not have hired, Ms. Brown, Ms. Holt, or Ms. Moser.  Dkt. 107-2, p. 21-22.

Plaintiffs respond by arguing that the District's policy stated that only a school nurse, or school counselor could conduct an interview of a suspected child abuse victim.  Dkt. 144, p. 16.  Additionally, Plaintiffs assert that "the fact that Diane Holt was allowed to 'train' Ms. Brown for these positions for which she was unsuited show negligent supervision on her part, as well as

---

[1] The Court will use the term negligence to encompass all of Plaintiffs' claims related to negligent training, negligent supervision, negligent hiring, negligent retention, and general negligence.

ORDER - 21

1  negligent supervision on the part of the Federal Way School District." *Id.*

2       School Defendants reply by stating that the Plaintiffs still have not identified any

3  evidence supporting their claim that the District knew or should have known that Ms. Holt or

4  Ms. Brown were unfit or had a potential for danger to others.  Dkt. 149, p. 11.  School

5  Defendants also state that Plaintiffs' misstate the District's policy on interviewing.  *Id.*  School

6  Defendants assert that the policy does not apply when abuse at home is not suspected at the

7  outset, but is disclosed during a discussion about a separate disciplinary matter that occurred at

8  school resulting in the student being sent to the administrator's office.  Dkt. 149, p. 12.

9       "Negligent supervision creates a limited duty to control an employee for the protection of

10  a third person, even when the employee is acting outside the scope of employment." *Rodriguez*

11  *v. Perez*, 994 P.2d 874, 880-81 (Wash. App. 2000).  "[A]n employer is not liable for negligent

12  supervision of an employee unless the employer knew, or in the exercise of reasonable diligence

13  should have known, that the employee presented a risk of danger to others." *Niece v. Elmview*

14  *Group Home*, 929 P.2d 420, 426 (Wash. 1997).  The prior knowledge element "require[s] a

15  showing of knowledge of the [specific] dangerous tendencies of the particular employee" that are

16  the subject of the later negligent supervision claim.  *Id.* at 427-28.  Likewise, a claim of

17  negligent hiring or retention arises if an employee hires or retains an individual that is known to

18  be dangerous or have the propensity to be dangerous.  *Niece v. Elmview Group Home*, 904 P.2d

19  784, 788 (Wash. App. 1995).

20       The same analysis applies to a "negligent training" theory, which is basically

21  encompassed within a negligent supervision theory.  *See Scott v. Blanchet High Sch.*, 747 P.2d

22  1124, 1128 (Wash. App. 1987).  The known danger element relates to intentional misconduct,

23  such as a known risk of sexually abusing vulnerable persons.  *See, e.g. id.*  In *Scott*, plaintiffs

24  failed to offer any evidence that the school failed to train or supervise its teacher.  *Id.*

25  Accordingly, the court did not find a breach of that duty.  *Id.*  For liability to attach there must be

26  an identified deficiency in an agency's training program which is closely related to the alleged

27  injury.  *City of Canton v. Harris*, 489 U.S 378, 391 (1989).

28       The Plaintiffs have not made a showing sufficient to establish the existence of all

ORDER - 22

1   elements of their claim. *See Celotex Corp.*, 477 U.S. at 322. Plaintiffs have not shown that any

2   Defendant has a history of improperly questioning students or reporting suspected abuse. There

3   is no evidence that the District failed to do any necessary or required background checks before

4   hiring Ms. Holt or Ms. Brown. There is no evidence that a background check would have

5   provided information that would have put the District on alert that these employees might coerce

6   and report false allegations of abuse as claimed by Plaintiffs. Plaintiffs make only

7   unsubstantiated allegations of "incompetence." This is not enough. For the foregoing reasons,

8   the School Defendants' motion for summary judgment should be granted in regards to Plaintiffs'

9   negligence claims.

10   **F.  Outrage Claims**

11        Defendants Knight and MHS join with State Defendants in their summary judgment

12   regarding Plaintiffs' outrage claims. Dkt. 98, p. 15. Defendants Knight and MHS assert that the

13   videorecording establishes beyond rational dispute that Ms. Knight acted reasonably. *Id.* State

14   Defendants argue that there is no evidence that Kernkamp acted in conscious disregard of

15   Plaintiffs' emotional well-being or with intent to harm Plaintiffs. Dkt. 93, p. 20. Rather, School

16   Defendants assert, Kernkamp's decision were motivated by the state's compelling interest in

17   protecting M.T. from Malachi, a registered sex offender who had previously sexually abused

18   M.T. and was alleged to have done so again. *Id.* Additionally, School Defendants argue that

19   Kernkamp's conduct was objectively reasonable given the particular facts of this case. *Id.*

20        Plaintiffs respond by asserting that Defendants occupied a position of power over

21   Plaintiffs; that Plaintiffs were peculiarly susceptible to emotional distress and the Defendants

22   knew of this fact; that the emotional distress was severe, and that the Defendants knew of the

23   high probability that their conduct would cause severe emotional distress. Dkt. 133, p. 12.

24        Intentional infliction of emotional distress is known in Washington as the tort of outrage.

25   *Brower v. Ackerly*, 943 P.2d 1141, 1147 (Wash. App. 1997). Outrage consists of three elements:

26   (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress,

27   and (3) actual result to the Plaintiff of sever emotional distress. *Birklid v. Boeing Co.*, 904 P.2d

28   278, 286 (Wash. 1995).

1    A defendant will only be liable for outrage when his conduct has been "so outrageous in

2    character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

3    regarded as atrocious, and utterly intolerable in a civilized community." *E.g. Birklid*, 904 P.2d at

4    286; *Dicomes v. State*, 782 P.2d 1002, 1012-13 (Wash. 1989).  Mere insults, indignities and

5    threats will not support a claim for outrage.  *Id*.  Although the issue of whether certain conduct is

6    sufficiently outrageous is ordinarily for the jury, it is initially for the court to determine if

7    reasonable minds could differ on whether the conduct was sufficiently extreme to result in

8    liability.  *Robel v. Roundup Corp*., 59 P.3d 611, 619-20 (Wash. 2002).  If reasonable minds

9    could not differ, the claim fails as a matter of law.  *Id*.  In determining whether conduct has been

10   sufficiently extreme and outrageous to result in liability under the tort of intentionally inflicting

11   emotional distress by outrageous conduct, the Court must consider: the position occupied by the

12   defendant; whether plaintiff was peculiarly susceptible to emotional distress; whether defendant's

13   conduct may have been privileged under the circumstances; the degree of emotional distress

14   caused by a party must be severe as opposed to constituting a mere annoyance, inconvenience or

15   the embarrassment which normally occur in a confrontation of the parties; and, the actor must be

16   aware that there is a high probability that his conduct will cause severe emotional distress and he

17   must proceed in a conscious disregard of it.  *Phillips v. Hardwick*, 628 P.2d 506, 510 (Wash.

18   App. 1981).  Washington courts have repeatedly rejected outrage claims when the defendant is a

19   state agency or official who was performing statutory duties in a reasonable manner.  *Guffey v.

20   State*, 690 P.2d 1163, 1164 (Wash. 1984).

21   Upon review of the video recording, the Court finds that reasonable minds could not

22   disagree that the interview by Ms. Knight was reasonable and not outrageous.  Defendants'

23   Knight and MHS's motion for summary judgment should be granted, and Plaintiffs' outrage

24   claims against Defendants' Knight and MHS should dismissed.

25   In regards to School Defendants, Plaintiffs make several conclusory statements and legal

26   conclusions to support their claims.  However, this is not enough to support a claim.

27   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

28   be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).  Plaintiffs

have not presented sufficient evidence to survive a summary judgment motion.  The School

Defendants' motion for summary judgment regarding Plaintiffs' outrage claims should granted

and the Plaintiffs' claims dismissed.

**G.  Intentional Interference with Family Relations Claims**

Defendants Knight and MHS assert that Plaintiffs fail to state a claim against Knight or

MHS and that even if the complaint is construed to state a claim, the Plaintiffs have not satisfied

the *prima facie* elements of that cause of action.  Dkt. 98, p 15.  Defendants Knight and MHS

state that the criminal charges against Malachi Tracy arose entirely from the independent

prosecutorial discretion exercised by the Pierce County Prosecutor.  Dkt. 98, p. 16.  Finally,

Defendants assert that Plaintiffs have failed to show a nexus between Ms. Knight's *de minimis*

involvement and the discretion exercised, months later, by the judge and prosecutor.  Dkt. 98, p.

17.

State Defendants assert that CPS social workers cannot be held liable under this cause of

action as a matter of law.  Dkt. 93, p. 22.  State Defendants assert that Kernkamp's and Young's

conduct does not rise to the level of "malicious" or "unjustified" interference as a matter of law.

*Id*.  State Defendants state that consistent with *Babcock v. State*, 768 P.2d 481 (Wash.

1989)("*Babcock I*"), Kernkamp and Young should not be held liable for acting under authority of

law in a complex and emotionally-charged case, especially when there is no evidence of intent to

harm Plaintiffs' familial relationships and no violation of any pertinent statute or regulation.  *Id*.

School Defendants also assert that Plaintiffs have not shown that there was an intent to

harm Plaintiffs.  Dkt. 107-2, p. 19-20.

The parties recharacterize Plaintiffs' "Interference with Family Relationships" claim as

an "Alienation of Affection" claim.  See Dkts. 93, p. 21-22; 133, p. 16.  The elements of a claim

for alienation of affection are: (1) an existing parent-child relationship; (2) a malicious

interference with the relationship by a third person; (3) an intention on the part of the third

person that such malicious interference results in a loss of affection or family association; (4) a

causal connection between the third parties' conduct and the loss of affection and (5) resulting

damages.  *E.g. Stode v. Gleason*, 510 P.2d 250, 254 (Wash. App. 1973).  "'Malicious

interference' refers to an unjustified interference." *Babcock v. State*, 768 P.2d 481, 494 (Wash. 1989)("*Babcock I*"). When acting under authority of law in a complex and emotionally-charged case, social workers cannot be held liable. *See id.*

As an initial matter, the Plaintiff Malachi Tracy's claims for intentional interference with family relations should be dismissed. This Court has not found law, and the Plaintiffs have not presented law, which would support a claim for the loss of a sibling's affection.

Plaintiffs respond to Defendants' motions by making conclusory statements and asserting legal conclusions. However, conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan*, 497 U.S. at 888-89. Plaintiffs have failed to provide evidence supporting various elements of their claim. Plaintiffs have failed to show that the acts of the Defendants were malicious or unjustified. Plaintiffs have failed to show the intent of the Defendants. Plaintiffs have also failed to show a causal connection and damages. Plainitffs' claim entirely fails. Defendants' motions for summary judgment should be granted and the Plaintiffs' claim for interference with family relations should be dismissed.

The Court need not address State Defendants' *Babcock* immunity arguments since the Plaintiff does not have a claim for outrage or intentional interference with family relations. The Court need not address Defendants Knight's and MHS's arguments regarding service and 12(b)(6) defenses since there are no claims that survive against Defendants Knight and MHS. The Court also need not address the School Defendants', State Defendants', and Defendants Knight and MHS's arguments regarding damages/harm since the Plaintiffs' claims will be dismissed. This case should be dismissed in its entirety.

**H. Motions to Strike**

The Court notes there are several motions to strike declarations and statements in the motions and in the footnotes of the motions. The Plaintiffs' record is replete with declarations and other evidence which lack foundation, is hearsay, or has other shortcomings. The evidence presented by Plaintiffs has been considered in accordance with the Federal Rules of Civil Procedure and in light of the Federal Rules of Evidence. They have been given their due weight. The various motions to strike should be denied.

ORDER - 26

**I. Conclusion**

Plaintiffs have simply failed to show any facts or issues of fact to support any of their claims.

### III. ORDER

The Court does hereby find and ORDER:

(1) Defendants' Motions for Summary Judgment (Dkts. 93, 98, 105, and 107-2) are **GRANTED**;

(2) Plaintiffs' cases are **DISMISSED**; and

(3)  The Clerk is directed to send copies of this Order to all counsel of record and any party appearing *pro se* at said party's last known address.

DATED this 2nd day of November, 2010.

Robert J. Bryan
United States District Judge